**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Best Western International, Inc., | No. CV 04-1194-PHX-SMM |
| Plaintiff, | **MEMORANDUM OF DECISION AND ORDER** |
| vs. | |
| 1496815 Ontario, Inc. et al., | |
| Defendants. | |

Pending before the Court is Defendants 1496815 Ontario, Inc.'s and Bryan Moyle's (collectively "Defendants") Motion to Dismiss (Doc. 33) Plaintiff Best Western International Inc.'s ("Plaintiff" or "BWI") Complaint for lack of personal jurisdiction pursuant to Fed.R.Civ.P.12(b)(2) and lack of subject matter jurisdiction pursuant to the Lanham Act, 15 §§ U.S.C. 1051 et seq. The Court has been briefed extensively by all parties and hereby finds the following.

## BACKGROUND[1]

On or about April 15, 2002, Defendants entered into a Membership Agreement with Plaintiff which resulted in Defendant Moyle becoming a member of Best Western,

---

[1] In a Motion to Dismiss, the court must presume all factual allegations of the Complaint to be true and draw all reasonable inferences in favor of the nonmoving party. *Usher v. City of Los Angeles*, 828 F.2d 556,561(9th Cir.1987).

Defendants' hotel becoming affiliated with Best Western, and the Membership Agreement becoming the controlling contract in the relationship between the Defendants and the Plaintiff. The Agreement included the following clauses:

> This Membership Application and Agreement shall be governed and construed according to the laws of the state of Arizona, unless any obligations under this Membership Application and Agreement shall be invalid or unenforceable under such laws, in which event the laws of the jurisdiction whose law can apply to and validate the obligations under the Membership Application and Agreement shall apply. This Membership Application and Agreement shall be deemed executed in Phoenix, Arizona.
>
> Applicant acknowledges that Best Western is headquartered in Phoenix, Arizona, that the majority of Best Western's records and employees are in Phoenix, Arizona, and that Phoenix, Arizona is the most convenient locale for actions between Best Western and Applicant.
>
> UNLESS WAIVED BY BEST WESTERN IN WHOLE OR IN PART, THE COURTS LOCATED IN THE STATE OF ARIZONA, STATE OR FEDERAL, SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ALL CLAIMS, DISPUTES AND ACTIONS ARISING FROM OR RELATED TO THE APPLICATION PROCESS, THIS MEMBERSHIP APPLICATION AND AGREEMENT OR TO ANY RELATIONSHIP BETWEEN THE PARTIES HERETO AND VENUE SHALL BE IN THE COURTS LOCATED IN MARICOPA COUNTY, ARIZONA. APPLICANT EXPRESSLY CONSENTS AND SUBMITS TO THE JURISDICTION OF SAID COURTS AND TO VENUE BEING IN MARICOPA COUNTY, ARIZONA. (Emphasis included)

Best Western International, Inc. Membership Application and Agreement, par. 37-38.

Pursuant to the Agreement, Defendants owned and operated the hotel formerly known as the Best Western Georgian Inn located in Parry Sound, Ontario, Canada. BWI is a non-profit corporation organized under the laws of the State of Arizona with its headquarters located in Phoenix, Arizona. BWI operates a membership association consisting of individually owned and operated hotels. The rights and obligations of its members are determined by the membership and are set forth in the Membership Agreement and in the Bylaws. Each Best Western member is authorized to use the Best Western trade name, trademarks, logos, and other similar identifying symbols in connection with its hotel and pursuant to a limited, non-exclusive license as set forth in the Membership Agreement. The

1 members adopt and have the authority to change the Best Western Bylaws, Membership
2 Agreement, and Rules and Regulations.

3 On or about March 9, 2004, in accordance with applicable provisions of the
4 Membership Agreement, Bylaws, and Rules and Regulations, BWI notified Defendants that
5 their membership had been terminated for failure to timely pay their account. Pursuant to
6 such termination, BWI advised Defendants that they needed to discontinue use of the Best
7 Western Marks.[2]

8 Notwithstanding the Agreement to do otherwise, Defendants failed to remove the Best
9 Western signs and collateral items containing the Best Western Marks, Defendants continued
10 to effectively hold the Hotel out to the public as a Best Western member, and Defendants
11 continued to advertise their Hotel on the internet and on reservation systems as the "Best
12 Western Georgian Inn".

13 Consequently, on June 6, 2004, BWI filed a Complaint in this Court (Doc. 1) for
14 breach of contract, federal trademark infringement, and unfair competition under the
15 Trademark Act of 1946, as amended (the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.), and
16 related common law and statutory causes of action arising from the Membership Agreement
17 entered into between the parties and the ensuing conduct. On June 9, 2004, Plaintiff filed a
18 Motion for a Preliminary Injunction (Doc. 2) against the Defendants. Defendants responded
19 to the Complaint on September 14, 2004, by filing an Answer (Doc. 5). On November 8,
20 2004, the parties stipulated to a preliminary injunction (Doc. 6) against the Defendants
21 whereby the Defendants were enjoined from displaying and advertising Best Western

---

[2] Pursuant to the Agreement, Defendants had agreed that "any portion of any sign displaying a Best Western [Mark] is and shall remain the property of Best Western." Defendants further agreed to "transfer title of all such portions of signs, whether now owned or acquired in the future, to Best Western" and upon termination of membership, Defendants agreed to "remove from public view and cease using" all Best Western Marks and all other references to Best Western within fifteen days of the date of termination.

- 3 -

1 Trademarks.[3] In April 2005, this case was referred to a Magistrate Judge for the purpose of
2 settlement. After two Motions to Continue the Settlement Conference, the Magistrate Judge
3 entered an Order vacating the final date selected for the settlement conference (Doc. 24).

4 On June 20, 2006, Defendants filed the current Motion to Dismiss (Doc. 33) Plaintiff's
5 Complaint. In the motion, Defendants contend that (1) the Arthur Wishart Act applies in this
6 case to render the forum selection clause void; (2) the court lacks personal jurisdiction
7 pursuant to Fed.R.Civ.P.12(b)(2); and (3) the claims of Best Western International Inc., filed
8 under the Lanham Act are due to be dismissed on the basis that the Act does not have
9 extraterritorial application in this case. On July 11, 2000, BWI filed a Response (Doc. 36)[4]
10 and on July 24, 2006, Defendants filed a Reply (Doc. 38).

**STANDARD OF REVIEW**

**A.    Fed.R.Civ.P. 12(b)(2)**

When a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing the court's personal jurisdiction over the defendant. *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). When the court relies on affidavits and discovery materials without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction to avoid the motion to dismiss. *Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir.2002). The allegations in the plaintiff's complaint must be taken as true and any conflicts in the facts presented by the parties must be resolved in the plaintiff's favor. *Id.*

"Where, as here, there is no applicable federal statute governing jurisdiction, the law of the state in which the district court sits applies." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir.2003) (*Harris*). Arizona's long-arm

---

[3] The preliminary injunction became effective upon Plaintiff's posting of a bond in the amount of $1000.00.

[4] (Doc. 37) is a duplicate Response to (Doc. 33); however, it includes an affidavit attachment.

- 4 -

statute allows for "personal jurisdiction over parties... to the maximum extent permitted by the Constitution of [Arizona] and the Constitution of the United States." Ariz. R. Civ. P. 4.2(a). Thus, the Court "need only determine whether personal jurisdiction in this case would meet the requirements of due process ." *Harris*, 328 F.3d at 1129 (quoting *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1258 (9th Cir.1989)).  Absent traditional bases for personal jurisdiction (physical presence, domicile, or consent), due process is satisfied when a defendant has minimum contacts with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

**B.     Fed.R.Civ.P.  12(h)(1)**

> A defense of lack of jurisdiction over the person...is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

Fed.R.Civ.P.12(h)

### DISCUSSION

As a preliminary matter, the Court finds that contrary to the contention of the Defendants, the Arthur Wishart Act, a Canadian franchising law, does not apply in this case. Therefore, the forum selection clause contained in the Membership Agreement will be undisturbed by said Canadian franchising law.

Defendants contend that "[b]y its very terms, the [Ontario] franchising law voids any contract clause selecting or mandating a forum for court disputed outside the Province of Ontario."  Defendants further contend that their hotel qualifies as a franchise under the Arthur Wishart Act and, accordingly, should be afforded protection under the act regarding the forum selection clause in the Membership Agreement in dispute.  However, Best Western contends that it is in fact a non-profit corporation operating a co-operative membership association.  The members adopt and have the authority to change the Best Western Bylaws, Membership Agreement, and Rules and Regulations; and BWI does not provide franchises.

- 5 -

Consequently, the Arthur Wishart Act would not apply. *See* S.O. 2000, c.3, s1[5]. Furthermore, for the Court to determine whether or not the Defendants' hotel qualifies as a franchise under foreign law, the Court would need to look to sources outside of the pleadings, an indicator that the issue is more appropriate for the summary judgment stage of litigation.

The Defendants have not provided the Court with any Ninth Circuit authority, or any other authority, to support the application of the Act to the case at hand. Moreover, it has come to the Court's attention that the Act, the only foundation upon which the Defendants base their argument that the forum selection clause should be rendered void, has yet to be applied to a case such as this in the United States.[6] Accordingly, the Court has no basis to apply this Act to the present case.

## I.     Motion to Dismiss Pursuant to 12(b)(2)–Personal Jurisdiction

While Defendants allege that this Court does not have the power to properly exercise personal jurisdiction over them, the Plaintiff contends that Defendants waived their right to object to personal jurisdiction by (1) failing to validly raise personal jurisdiction as a defense in either their Answer or a Motion to Dismiss filed prior to the Answer[7]; (2) by making a general appearance, and (3) by conduct inferring Defendants' acquiescence to the exercise of this Court's jurisdiction.

First, Plaintiff avers that Defendants missed their first bite at the apple when they failed to validly raise their objection to personal jurisdiction in their Answer or, in the alternative, in a motion filed prior to the Answer. Defendants refute this assertion by

---

[5]This is a citation to the Arthur Wishart Act.

[6] In the only case in which the Act was cited in this country, the Plaintiffs noted that the Arthur Wishart Act did not apply if the business operated by the dealer or franchisee was not located in Ontario, Canada. The Dealers agreed with the assessment and stipulated to dismiss the claim under the Act. *Volvo Trademark Holding Aktiebolaget v. CLM Equipment Co., Inc*. 236 F.Supp.2d 536, 554 (W.D.N.C.,2002).

[7]Pursuant to Fed.R.Civ.P.12(b), if the defense is one which must be made by motion, it may be so made **only** if the motion is filed before the pleading. (Emphasis added)

- 6 -

attempting to import significance to the following sweeping statement included in their Answer, "[a]s affirmative defenses, Defendants allege accord and satisfaction, waiver, estoppel, statute of limitations, laches, failure of consideration and <u>all other affirmative defenses that may arise during the pendency of this action</u>." (emphasis included). The Court notes that the word "jurisdiction" is not included in the string of affirmative defenses included in this statement. Based on the requirements of Fed.R.Civ.P.12(b), 12(h),[8] and without supporting authority demonstrating otherwise, the Court does not find the language included in Defendants' Answer an adequate objection to personal jurisdiction.[9] If the Court accepted as sufficient the Defendants' general sweeping objection to include the defenses not specifically raised, such as jurisdiction, it would render the federal requirement promulgated in Fed.R.Civ.P.12(h)(1) meaningless.

Plaintiff further contends that Defendants waived their objection to personal jurisdiction by making a general appearance in the case. Defendants can waive the defect of lack of personal jurisdiction by appearing generally without first challenging the defect in a preliminary motion. *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982)*(citing Amen v. Dearborn*, 532 F.2d 554, 558, n.7 (6th Cir. 1976))(Jurisdiction attaches if a defendant makes a voluntary general appearance, as by filing an answer through an attorney). Here, Defendants filed their Answer on September 17, 2004. Furthermore, after reviewing the pleadings in their entirety, it is evident to the Court that the Defendants have acquiesced to and even requested the exercise of this Court's jurisdiction since the conception of this law suit. Defendants have previously filed with the Court an Answer (Doc. 5), a Stipulation for Entry of Preliminary Injunction (Doc. 6) wherein the Defendants agreed that the Court may

---

[8] The objection to personal jurisdiction must be raised as an affirmative defense in the Answer or by motion prior to the filing of the Answer. Fed.R.Civ.P.12(b).

[9] It is also telling that if the Court accepted Defendants' argument regarding their Answer, Fed.R.Civ.P. 12(g) as it relates to personal jurisdiction would effectively be meaningless.

- 7 -

1 enter a preliminary injunction against them, a Joint Proposed Case Management Plan (Doc. 2 11) wherein the parties agree that there are <u>no parties to the case that are not subject to this</u> 3 <u>Court's Jurisdiction</u> (emphasis added),  a Stipulation to a Settlement Conference (Doc. 13), 4 motions to continue, and the present Motion to Dismiss (Doc. 33).  Accordingly, the Court 5 finds the Defendants' overall conduct illustrates that they have waived their objection to 6 personal jurisdiction and that the Court has personal jurisdiction in this case.  Because the 7 Court has established that Defendants effectively waived their objection to personal 8 jurisdiction and clearly made a general voluntarily appearance in this case, it is not necessary 9 to continue with a minimum contacts analysis.

10 **II.     Motion to Dismiss Lanham Act Claims for Lack of Subject Matter Jurisdiction**

11 Defendants move to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. 12 P 12(b)(1), asserting that the Court lacks jurisdiction to hear Plaintiff's Lanham Act, 15 13 U.S.C. § 1051-1127, claims. Defendants argue that because the alleged violations took place 14 in Canada, by a Canadian company, this Court cannot entertain Plaintiff's claims.  Thus, the 15 Court must decide whether there is subject matter jurisdiction over Plaintiff's Lanham Act 16 claims.

17 In *Wells Fargo*, the Ninth Circuit held "the Lanham Act's coverage of foreign 18 activities may be analyzed under the test for extraterritorial application of the federal antitrust 19 laws set forth in *Timberlane Lumber Co. v. Bank of America National Trust & Savings* 20 *Ass'n*, 549 F.2d 597 (9th Cir. 1976) (Timberlane I)." *Wells Fargo & Co. v. Wells Fargo* 21 *Express Co.*, 556 F.2d 406, 427-428 (9th Cir. 1977).     In *Timberlane*, the Ninth Circuit 22 identified three criteria that must be satisfied to apply Lanham Act to claims originating 23 extraterritorially.  First, the alleged violations must create some effect on American foreign 24 commerce; second, the effect must be sufficiently great to present a cognizable injury to 25 plaintiffs under federal statute; and third, the interests of and links to American foreign 26 commerce must be sufficiently strong in relation to those of other nations to justify an 27 assertion of extraterritorial authority. *Timberlane Lumber Co. v. Bank of America Nat'l Trust*

28

- 8 -

*& Sav's Ass'n,* 549 F.2d at 613-15. This third prong requires consideration of several factors. *Id.*

The first part of the *Timberlane I* test requires that there be some effect on American foreign commerce, either actual or intended, before the federal courts may legitimately exercise subject matter jurisdiction under the (antitrust) statutes. *Timberlane Lumber Co. v. Bank of America, Nat'l Trust & Sav's Ass'n*, 549 F.2d at 613. Defendants contend that their alleged violation does not effect the foreign commerce of the United States. They argue that "effects on U.S. foreign commerce are highly unlikely to result from a Canadian leaving up a sign in front of a hotel for a time deemed too long." (Doc. 33). Furthermore, they contend that even if an effect on American commerce is found from their alleged continued affiliation with Best Western, this effect is not dispositive on the issue. Plaintiff refutes this assertion, arguing that the Defendants' continued use of the Plaintiff's name, label, and advertising has likely caused confusion and deceived the public into purchasing its services in the belief that the Defendants' hotel property was in fact a Best Western hotel long after the termination of its membership. Plaintiff alleges there has been further effect as a result of the likelihood that Defendants' conduct has diverted to them the benefit of the reputation and good will associated with BWI's name throughout the territory. They contend that BWI's significant investment of resources in providing membership services to its members and the substantial dues and fees paid by the members are effected by the conduct of the Defendants. Thus, for Defendants to hold their hotel out as a Best Western without adhering to the quality standards, without payments of fees or dues, and all the while diverting customers from authentic Best Western members, Defendants have damaged the reputation and good will associated with Best Western and injured the business of all Best Western. Consequently, Plaintiff contends that the effect of Defendants' alleged conduct on American foreign commerce is both direct and substantial.

With regard to the second prong of the *Timberlane I* test, the Defendants merely state "it is unlikely that Defendants' alleged violations will pass the second prong of the extraterritorial application test by showing that the effect is sufficiently large to present a cognizable injury to Plaintiff." The Defendants have not elaborated on their general assertion regarding the second prong of the test. They merely assert that Plaintiff cannot satisfy the prong.[10] So long as there is "monetary injury in the United States" to plaintiff, then there is a "cognizable [claim] under the Lanham Act." *Mattel, Inc. v. MCA Records, Inc.,* 28 F.Supp.2d 1120, 1130 (C.D.Cal.,1998).[11] The Court finds that the effect of the Defendants' violation as alleged by Plaintiff was sufficiently great to present a cognizable injury to Plaintiff under the federal statute. *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.,* 769 F.2d 1393, 1395 (9 th Cir. 1985).

As a matter of international comity and fairness, the extraterritorial jurisdiction of the United States may be applied only under certain circumstances. Historically, the third requirement of the *Timberlane I* test has been given a more in depth analysis than the former two requirements. This prong involves the balancing of seven relevant factors to determine whether the interests of and links to American commerce are sufficiently strong in relation to those of other nations to justify extraterritorial application of the Lanham Act. *Timberlane Lumber Co. v. Bank of America Nat'l Trust & Sav's Ass'n,* 549 F.2d at 613-15. The following is a balancing of the seven factors involved in the third prong of the *Timberlane I* test.

---

[10]The Plaintiff contend that the commercial use of a registered trademark such as Defendants' use of Plaintiff's marks, entitles registrant, here, Plaintiff, to injunctive relief and the recovery of damages and if the violation is intentional, the registrant may recover treble damages.

[11] Here, Plaintiff's prayer for relief includes liquidated damages for the continued use of the Marks past termination of the Agreement.

**The Degree of Conflict with Foreign Law or Policy**

Whether and to what degree the extraterritorial application of the Lanham Act will create an actual or potential conflict with the laws or policies of Canada is a complex issue. Both parties submit that currently there are no matters pending in the Canadian court system regarding this law suit. *See Wells Fargo,* 556 F.2d at 428-29 (the existence of a conflict with a foreign trademark registration weighs against extraterritorial application of the Lanham Act); *Reebok Intern., Ltd. v. Marnatech Enterprises, Inc,.* 970 F.2d 552, 554 -555 (9th Cir.1992). Therefore, the Court finds that there is little risk of conflict with foreign law or policy.[12]

**The Nationality or Allegiance of the Parties and the Location of Principal Places of Business of the Corporations**

Plaintiff is an Arizona non-profit corporation with its principal place of business in Phoenix, Arizona. Plaintiff's witnesses are either located in Phoenix or available in Phoenix. Defendant Moyle is a Canadian citizen. Defendant Ontario is a Canadian corporation with its principal place of business in Parry Sound, Ontario.[13]

**The Extent to Which Enforcement by Either State Can Be Expected to Achieve Compliance**

During the pendency of this case, the Court has been able to conduct proceedings and compliance with this Court's orders has been achieved.

---

[12] Although the Arthur Wishart Act may potentially conflict with American substantive law as it applies to the forum selection clause of the Membership Agreement, the Court finds that there would be conflict as to the trademark issues.

[13] The Court finds significant importance in the existence of the Arizona forum selection clause when considering "allegiance of the parties" to a location.

- 11 -

**The Relative Significance of Effects on the United States as Compared with Those Elsewhere**

At this stage of the proceedings, Defendants' assertion that alleged trademark violation committed in Canada necessarily results in having a greater effect in Canada than anywhere else is without factual support. Plaintiff contends however that the situation is not necessarily that elementary. Plaintiff argues that the alleged conduct of Defendants has impacted the good will and reputation of BWI, an Arizona corporation, which in turn inherently effects all members of BWI. When the reputation and good will of a business, here an American association of hotels with its headquarters located in the United States, is put into jeopardy, the Court finds that there can be significant effect on the business, as well as on the United States.

**The Extent to Which There Is Explicit Purpose to Harm or Affect American Commerce**

Defendants aver that their conduct was consistent with Canadian laws and practices, and "there was never particular interest in affecting United States commerce". Despite the fact that the Defendants' conduct may have been consistent with Canadian law, Defendants knowingly entered into a contract with Plaintiff thereby agreeing to resolve any disputes in the State of Arizona and according to the laws of Arizona. Thus, Defendants' argument that their conduct was consistent with Canadian law simply is lacking in merit.

At this time, the record demonstrates that Defendants' had actual knowledge that they were placing in commerce the trademarks and symbols of BWI subsequent to the termination of their membership and license. The conduct was in direct conflict with the contractual terms of the Membership Agreement and can be construed as being directly aimed at affecting an Arizona corporation engaged in commerce in America, Canada, and worldwide.

**The Foreseeability of Such Effect**

Defendants argue that as a consequence of the hotel location and the fact that they dealt primarily with Best Western offices in Canada[14], the effects on the American commerce was unforeseeable. However, according to Cheryl Pollack, Director of Member Services Administration of BWI, the effects on the American commerce was not in fact unforeseeable. She attests that Defendants made use the reservation system headquartered in Phoenix, Arizona, received billing from the Phoenix, Arizona office, and often mailed their bills to the Phoenix, Arizona office. Pollack explained that all member services are conducted from the Arizona office, and the customer service center which receives complaints made by customers of Defendants' hotel is located in Phoenix. (Doc. 37-2).

Moreover, by the terms of the Membership Agreement, the Defendants agreed to the imposition of liquidated damages for the continued use of the Best Western marks after the termination of their membership. The continued use of the marks undoubtedly effects commerce in that Best Western is essentially an American business name that represents quality and reputation and is sold for use by others. Others seek to use the name for the benefit of its good will and reputation. If the name is diluted and the reputation tainted, all members and arguably customers are thereby effected.

Simply put, the combination of Defendants' active use of the Phoenix office during their membership, as well as the contemplation in the contract of liquidated damages for the continued use of the marks, give rise to the matter of foreseeability. Where the Defendants knew that liquidated damages would be imposed for the illegal continued use of the marks, the Court finds that the Defendants were on sufficient notice that such conduct could have a potentially devastating effect on American commerce.

---

[14] Plaintiff contends via affidavit of Cheryl Pollack, Director of Member Services Administration of BWI, that BWI does not and has never had a regional office in Canada. (Doc. 37-2)

- 13 -

**The Relative Importance to the Violations Charged of Conduct Within the United Stated as Compared with the Conduct Abroad**

Finally, this Court will consider the location of the alleged improper conduct in assessing the appropriateness of the exercise of jurisdiction. There is no dispute in this case that the infringing conduct occurred in Canada.

**Resolving the Seven Factor Test**

After careful consideration of all the factors in the *Timberlane I* test, the Court concludes that overall, the factors weigh in favor of the exercise of jurisdiction in this case. Therefore, the Court finds that the extraterritorial application of the Lanham Act is proper and the Court has subject matter jurisdiction.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss is **DENIED** without prejudice. **(Doc. 33).**

**IT IS FURTHER ORDERED** that Plaintiff has established that the Court has personal jurisdiction over the Defendants, as well as subject matter jurisdiction over the case.

DATED this 13th day of March, 2007.

*/s/ Stephen M. McNamee*
Stephen M. McNamee
United States District Judge